**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDRES B. FIGUEROA, | Civil Action No.: 17-8239 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Andres B. Figueroa's appeal for judicial review of a final decision issued on behalf of the Commissioner of the Social Security Administration ("Commissioner"), who denied his claim for disability insurance benefits. (ECF No. 1). After careful consideration of the administrative record, submissions made in support of, (ECF No. 13), and in opposition to, (ECF No. 14), the instant appeal, the Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court remands this matter for further proceedings consistent with this Opinion.

## I.    BACKGROUND[1]

On January 14, 2014, Plaintiff filed an application for supplemental security income ("SSI") alleging disability as of January 1, 2010. (R. at 141). Plaintiff alleged he was disabled as

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF Nos. 6 through 6-7.

a result of bipolar disorder and attention deficit hyperactivity disorder ("ADHD"). (R. at 155).

Plaintiff's application was denied initially on March 15, 2014, and denied again upon

reconsideration on April 30, 2014. (R. at 91–98). At a hearing on Plaintiff's application on

January 28, 2016 before Administrative Law Judge Leonard Olarsch (the "ALJ"), Plaintiff's

counsel clarified that Plaintiff requested SSI for a closed period of disability for the period of

October 26, 2013 to December 31, 2014, after which date Plaintiff commenced gainful

employment as a tow truck driver. (R. at 29–30). After conducting a five-step analysis, the ALJ

determined that Plaintiff was ineligible for payment of SSI because he was not disabled as defined

by the Social Security Act. (R. at 10–17).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since October 26, 2013. (R. at 12). At step two, the ALJ found that Plaintiff suffered from

the severe impairment of bipolar disorder. (R. at 12). However, at step three, the ALJ determined

that Plaintiff's impairment or combination of impairments did not meet or medically equal one of

the listed impairments. (R. at 12). At step four, the ALJ found that Plaintiff has the residual

functioning capacity ("RFC") to perform a full range of work with certain non-exertional

limitations, including occasional interaction with supervisors, co-workers, and the general public.

(R. at 14). At step five, with the help of a vocational expert, the ALJ concluded that there are jobs

that exist in significant numbers in the national economy that Plaintiff could perform, including

commercial cleaner, hand packager, and price marker. (R. at 15–16).

On April 22, 2016, Plaintiff requested review of the ALJ's determination by the Appeals

Council, (R. at 137–40), which the Appeals Council denied on August 18, 2017, (R. at 1). On

October 13, 2017, Plaintiff filed this appeal. (ECF No. 1). Plaintiff argues that the ALJ erred at

steps two, three, four, and five of the analysis. (ECF No. 13 at 18–33). For the reasons set forth

below, this matter is remanded for further proceedings consistent with this Opinion.


## II. STANDARD OF REVIEW

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42

U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence,

this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir.

1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of

the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Consequently, this

Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry

differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).


## III. ANALYSIS

Under the Social Security Act, the Social Security Administration is authorized to pay

Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if

"he is unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or

mental impairments are "of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.1520. At step one, an ALJ assesses whether the claimant is currently performing substantial gainful activity. 20 C.F.R. § 416.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has a "severe" physical or mental impairment or combination of impairments. 20 C.F.R. § 416.1520(a)(4)(ii). Absent such impairment, the claimant is not disabled. *Id.* Conversely, if the claimant has such an impairment, an ALJ proceeds to step three. *Id.* At step three, an ALJ evaluates whether the claimant's severe impairment either meets or is the equivalent of a listed impairment. 20 C.F.R. § 416.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* Otherwise, an ALJ moves on to step four, which involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).

When determining RFC, an "ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679 (3d Cir. 2015) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an ALJ must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.1520(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an ALJ proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* Notably, an ALJ typically seeks the assistance of a vocational expert at this final step. *Id.*

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 n.5 (1987)). The Commissioner bears the burden of proof for the final step. *See id.* at 263.

## A.     Step Two: Severe Impairments

Plaintiff contends that the ALJ erred at step two by failing to consider Plaintiff's anxiety disorder as a severe impairment. (ECF No. 13 at 14, 18). The designation of a particular impairment as severe or non-severe at step two is merely a threshold question. As long as an ALJ finds at least one impairment to be severe, the ALJ considers all of a claimant's impairments in combination—severe and non-severe—at step three. In other words, impairments found to be non-severe are nevertheless included in the step three analysis, so if an ALJ finds that at least one of a claimant's impairments is severe at step two, findings of non-severity as to other impairments are

5

harmless. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."). Here, the ALJ's finding at step two that Plaintiff's bipolar disorder was a severe impairment required the ALJ to consider the entirety of Plaintiff's impairments at step three. (R. at 12). Therefore, the ALJ's decision to designate only bipolar disorder as a severe impairment is not a basis for remand.

## B. Step Three: Listed Impairments

Plaintiff further argues that the ALJ erred at step three in finding that Plaintiff did not meet the requirements for Listings 12.04 and 12.06. (ECF No. 13 at 18–27).

### 1. Listing 12.04 (Affective Disorders)

Listing 12.04 requires that a claimant satisfy the criteria in Paragraph A as well as the criteria in either Paragraph B or Paragraph C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.[2] The ALJ found that Plaintiff failed to satisfy the criteria in both Paragraphs B and C, such that consideration of the Paragraph A criteria was not necessary. (R. at 12–13). Plaintiff disputes the ALJ's determination that Plaintiff failed to satisfy at least two of the Paragraph B criteria for Listing 12.04: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404,

---

[2] Effective January 17, 2017, the Social Security Administration revised its criteria for evaluating mental disorders, including bipolar disorder. *See Revised Med. Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138–01 (Sept. 26, 2016). This Court reviews the ALJ's decision using the rules that were in effect at the time the decision was rendered. *See Levash v. Colvin*, No. 16-2189, 2018 WL 1559769, at *3 n.2 (D.N.J. Mar. 30, 2018) (citing 81 Fed. Reg. 66138–01).

Subpt. P, App. 1, § 12.04. Plaintiff does not argue that he experienced any episodes of decompensation during the period in question, but maintains that he suffers from marked difficulties in each of the first three categories. (*See* ECF No. 13 at 18–27).

The ALJ, based on a reading of his decision as a whole, appears to have conducted a thorough review of the evidence in the record, including documentation of Plaintiff's assessments at Trinitas Hospital in 2012, (R. at 219–34), a February 2014 consultative examination with Dr. Ernesto Perdomo, (R. at 235–238), and opinions of two state agency psychologists, Dr. Sharon Flaherty, (R. at 66–76), and Dr. Joan Joynson, (R. at 78–87). The ALJ found that Plaintiff experienced only moderate restriction of activities of daily living, noting that, during Plaintiff's examination with Dr. Perdomo, Plaintiff "reported that he took care of his personal needs and hygiene," though he showered only once a week when his brother "forced" him to do so. (R. at 13). The ALJ also found that Plaintiff exhibited only moderate difficulties in social functioning. (R. at 13). Though Plaintiff "reported having no friends and being socially withdrawn," the ALJ emphasized that Plaintiff "maintain[ed] a cooperative attitude as well as good eye contact" during his visits to Trinitas Hospital. (R. at 13). Finally, the ALJ found that Plaintiff had moderate difficulties with concentration, persistence, or pace. (R. at 13). Though Plaintiff reported "racing thoughts, no motivation, no interest and fatigue," Dr. Perdomo's report showed that Plaintiff's "thought processes were organized and focused," Plaintiff "spoke coherently and relevantly," and Plaintiff's "long-term memory and concentration were only mildly impaired." (R. at 13).

The Court finds that the ALJ's Paragraph B determination is supported by substantial evidence, including the assessments of Dr. Perdomo and the physicians at Trinitas Hospital cited by the ALJ. Furthermore, both state agency psychologists, to whose opinions the ALJ accorded some weight, (R. at 15), found Plaintiff's difficulties in the Paragraph B categories to be moderate

rather than marked or severe, (R. at 71, 83). "ALJs properly consider the opinions of state agency medical consultants as expert opinion evidence of nonexamining physicians." *Trzeciak v. Colvin,* No. 15-6333, 2016 WL 4769731, at *10 (D.N.J. Sept. 12, 2016). It is not the purview of this Court to "weigh the evidence or substitute its own findings for the Commissioner's." *Davern v. Comm'r of Soc. Sec.,* 660 F. App'x 169, 174 (3d Cir. 2016). Because the ALJ appropriately linked his findings to medical evidence in the record, the Court finds that the ALJ's step three conclusion that Plaintiff failed to meet the Paragraph B requirements of Listing 12.04 was supported by substantial evidence.

The ALJ also determined that Plaintiff did not satisfy the Paragraph C criteria: (1) a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms currently attenuated by medication or psychosocial support, *and* either: (2) repeated episodes of decompensation, each of extended duration; (3) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause the claimant to decompensate; or (4) a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement. (R. at 13); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Plaintiff does not argue that he experienced any episodes of decompensation, nor is there evidence that Plaintiff would experience decompensation as a result of a marginal adjustment in circumstances. There is likewise no evidence in the record that Plaintiff was unable for one or more years to function outside a highly supportive living arrangement. Therefore, the Court finds sufficient evidence supporting the ALJ's determination that Plaintiff did not satisfy the Paragraph C criteria.

## 2. Listing 12.06 (Anxiety-Related Disorders)

Plaintiff suggests that the ALJ should have expressly considered whether Plaintiff met the requirements for Listing 12.06. (ECF No. 13 at 33). However, Listing 12.06 requires either the satisfaction of the same Paragraph B criteria as Listing 12.04 or symptoms resulting in Plaintiff's complete inability to function independently outside the area of one's home. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. Because the Court finds that the ALJ's determination that Plaintiff failed to meet the Paragraph B criteria in the Listing 12.04 analysis was based on substantial evidence, and there is no evidence in the record that Plaintiff cannot function independently outside his own home, the fact that the ALJ did not expressly discuss those criteria under Listing 12.06 was harmless. *See Albury v. Comm'r of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (finding ALJ's failure to discuss applicable listings to be harmless error where ALJ's "decision [was] explained in sufficient detail to allow meaningful review").


## C. Step Four: RFC

Plaintiff also argues that the ALJ erred in determining Plaintiff's RFC. (ECF No. 13 at 31–33). At step four, the ALJ first determined that Plaintiff's "medically determinable impairment [bipolar disorder] could reasonably be expected to cause the alleged symptoms." (R. at 15). However, the ALJ made a negative credibility finding concerning Plaintiff's statements about the severity of those symptoms. (R. at 15). The ALJ likewise assigned little weight to the opinion of Dr. Perdomo—who had assessed Plaintiff as depressed and "functionally illiterate with very low borderline intellectual functioning," and who opined that Plaintiff's condition "affected his ability to function in the occupational and social spheres of life"—as inconsistent with other record evidence. (R. at 15). As a result, the ALJ concluded that Plaintiff retained an RFC enabling him

to perform a full range of work with certain non-exertional limitations, including occasional interaction with supervisors, co-workers, and the general public. (R. at 15–16).

The Court finds the ALJ's evaluation of the severity of Plaintiff's symptoms at step four to be flawed in two ways. First, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible," relying in part on Plaintiff's testimony that his symptoms stabilize when he is taking medication and participating in therapy. (R. at 15). The Court agrees with the ALJ's determination that the Plaintiff's symptoms were stabilized *when he was receiving medication and treatment*, such as the treatment he received while in prison and at Trinitas Hospital. (R. at 33–34). However, Plaintiff was not being treated during the requested period of disability because of his financial circumstances: Plaintiff stopped taking medication and attending therapy in early 2013 because he was uninsured and could not afford medical care. (R. at 35, 235). Plaintiff tried to find affordable treatment during this period but was repeatedly turned away because he was uninsured. (R. at 34–35). During the closed period when Plaintiff was not taking medication, he experienced racing thoughts and extreme highs and lows of energy, suffering from insomnia for days at a time only to crash for periods of prolonged sleep. (R. at 37–38). He also behaved confrontationally with friends, employers, customers, and the mother of his child. (R. at 39–40). At the time of the hearing, Plaintiff was seeking low-cost treatment from a counselor, but he reported that only his medication could help him "slow down," noting that without the medication his symptoms were "intolerable," and that "sometimes [he] fe[lt] like just killing [himself] and getting it over with."[3] (R. at 36).

___

[3] Though occurring outside the closed period of disability, Dr. Judith Delblasio documented that Plaintiff has attempted suicide four times in his life. (R. at 219).

The ALJ is correct that he must evaluate Plaintiff's symptoms generally taking into account "the type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate [those] symptoms." 20 C.F.R. § 404.1529(c)(3)(iv). However, the ALJ incorrectly based his RFC determination on his evaluation of Plaintiff's alleviated symptoms *while medicated*, despite the fact that Plaintiff was *not* medicated during the period of requested disability. (R. at 15). The ALJ should have considered Plaintiff's impairments as they manifested during the period in question— not as they manifested during previous years when Plaintiff was taking medication while in prison or at Trinitas Hospital. Whether Plaintiff was capable of gainful activity during the period from October 2013 to December 2014 depends on Plaintiff's symptoms as he actually experienced them, not on Plaintiff's symptoms as regulated by treatment that he did not receive during that time.

Furthermore, the response of Plaintiff's impairments to medication does not warrant a negative credibility finding concerning Plaintiff's testimony about those impairments when unmedicated. The ALJ should have considered Plaintiff's inability to afford treatment during the closed period when making his credibility finding concerning Plaintiff's testimony about his untreated impairments. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003) (holding the plaintiff's inability to afford treatment to be an adequate explanation for her failure to seek it); *Torres v. Comm'r of Soc. Sec.*, No. 15-6344, 2016 WL 5339724, at *5 (D.N.J. Sept. 23, 2016) (finding an ALJ's "failure to consider [the plaintiff's] ability to afford medical treatment constitute[d] error warranting remand" where the "ALJ's credibility determination had a significant impact on the RFC analysis"); *Vaneman v. Comm'r of Soc. Sec.*, No. 04-4687, 2009 WL 2143649, at *11 (D.N.J. July 14, 2009) ("The ALJ erred by concluding that Plaintiff's description of her disabling pain lacks credibility because he failed to consider Plaintiff's claimed inability to afford treatment.").

Second, the ALJ repeatedly relied on the fact of Plaintiff's return to work as a tow truck driver commencing in January 2015 as evidence that Plaintiff was capable of working during the requested period—from October 2013 to December 2014. (R. at 15–16). The ALJ cited to this fact as justification for assigning little weight to the opinion of Dr. Perdomo, concluding that his opinion was "not consistent" with Plaintiff's return to work in January 2015. (R. at 15). But Dr. Perdomo assessed Plaintiff in February of 2014, in the beginning of the claimed period, almost a year before Plaintiff's return to work. (R. at 235). The question before the ALJ was whether Plaintiff was capable of working during the claimed period of disability, not immediately after it. Plaintiff's subsequent work history has little bearing on the credibility of Dr. Perdomo's evaluation, which occurred during the relevant period.

Plaintiff's return to work in January 2015 also caused the ALJ to question whether Plaintiff's "unemployment during the relevant period was actually due to medical impairments or [rather due to] other non-disability reasons," since the ALJ found "no indication in the record of medical improvement" in Plaintiff's symptoms at the time of his return to work. (R. at 16). The Court cannot review what "other non-disability reasons" the ALJ suspected that Plaintiff had for remaining unemployed, without income or health insurance, during the relevant period, as the ALJ did not elaborate in his decision and no non-medical reasons are apparent from the record. A claimant's "return to work is not dispositive of her eligibility for a closed period of disability," but must instead be evaluated in the context of other evidence. *Lee v. Comm'r of Soc. Sec.*, 248 F. App'x 458, 461 (3d Cir. 2007). In this case, while it is true that the record does not indicate an improvement in symptoms in January 2015, that fact does not necessarily show that Plaintiff's symptoms during the period in question were not so bad as to keep him from working. At the time of the hearing, Plaintiff reported having taken repeated unexplained leaves of absence from his job

because of his symptoms and getting into confrontations with his employers, noting that he was surprised that he had not been disciplined or terminated. (R. at 32–33, 39). The ALJ should have evaluated Plaintiff's return to work in the context of this evidence showing that Plaintiff did so *in spite of* ongoing symptoms, rather than understanding Plaintiff's return to work in itself to be evidence that his symptoms were nonexistent or not severe.

Accordingly, the Court cannot conclude that the ALJ's determination at step four was supported by substantial evidence. On remand, the ALJ should consider the evidence in light of amendments to the relevant regulations. *See* 81 Fed. Reg. 66138–01 ("If a court . . . remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand."). The ALJ should also consider new evidence that was not before him during the initial proceedings but that became part of the record before this Court: 1) an evaluation of Plaintiff in January 2016 by his treating psychotherapist, clinical social worker Judith Rosenstein, (R. at 21–26); and 2) a January 2016 letter from Jennifer Correa, the mother of Plaintiff's child, (R. at 218).

## IV.   CONCLUSION

For the aforementioned reasons, the Court remands this matter for further proceedings that are consistent with this Opinion. An appropriate Order accompanies this Opinion.

DATED: December **28** , 2018

_____
JOSE L. LINARES
Chief Judge, United States District Co